UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN C. GAZLAY,<br><br>                Plaintiff,<br>v.<br><br>JOSEPH LOMBARDO, *et al.*,<br><br>                Defendants. | Case No. 2:21-cv-1318-RFB-BNW<br><br>**ORDER SCREENING COMPLAINT AND DENYING MOTION TO APPOINT COUNSEL**<br><br>(ECF No. 7) |

Plaintiff Steven C. Gazlay, who was detained at the Clark County Detention Center ("CCDC"), has submitted a civil-rights complaint under 42 U.S.C. § 1983 and paid the full filing fee for a civil action. (ECF Nos. 1-1, 3.) Gazlay also filed a motion for the Court to appoint him a lawyer. (ECF No. 7.) The Court now screens Gazlay's civil-rights complaint under 28 U.S.C. § 1915A and determines his motion to appoint him counsel.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

/ / /

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim

for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.     SCREENING OF COMPLAINT

In his Complaint, Gazlay sues multiple Defendants for events that took place while he was detained at CCDC and arrested in Idaho. (ECF No. 1-1 at 3.) Gazlay sues Defendants Joseph Lombardo, Carlos Miranda, Colleen Baharav, Binu Palal, Daniel Hawkins, Janifer Baker, and John Does 1–10. (*Id.* at 3–4.) Gazlay brings five claims and seeks declaratory, monetary, and injunctive relief. (*Id.* at 8–19.)

Gazlay alleges the following. On January 29, 2021, he was released from CCDC on bail pending trial and under house arrest. (*Id.* at 5.) But before Gazlay could leave the facility, three officers approached and told Gazlay that, under Sergeant Miranda's orders, he was being returned to custody. (*Id.*) Days earlier Gazlay had been quoted in the news as stating that "he had posted his bail but house arrest at the jail were denying him release." (*Id.* at 6.) The officers told Gazlay that he was being returned to custody in "'retaliation for exercising [his] First Amendment right.'" (*Id.*)

Gazlay was told to strip and return his street clothes, but an officer refused to provide him alternative clothes to wear and threatened to beat him if he did not comply. (*Id.* at 6–7.) Because the officer did not provide alternative clothing, Gazlay put his street clothes on when the officer left the room. (*Id.* at 7.) The officer saw this, said "you['re] gonna be sorry when I return[,] left and returned with a tear gas dispenser and holding batons. (*Id.*) The officer cuffed Gazlay, placed

him in a suicide cell, stripped him naked, and left him there for three days. (*Id.* at 8.) Gazlay was cooperative the entire time. (*Id.*)

After three days Gazlay was cuffed by another officer, removed from the cell, and without provocation "slammed" to the floor "where he was kicked and struck by officers." (*Id.* at 9.) Other officers stood by without helping Gazlay and some of them also kicked and struck him. (*Id.*) After this beating, Gazlay wanted to submit a sick-call request to make an appointment with a medical provider. (*Id.* at 11.) But an officer refused to place Gazlay's request in the medical request box. (*Id.* at 9.) Gazlay alerted Lombardo about the assault but Lombardo "has refused to take disciplinary action against [the officers] or to control their behavior." (*Id.*)

After the assault, Gazlay "was taken to [a] 24/7 maximum custody segregation cell." (*Id.* at 10.) He was placed in segregation without any disciplinary hearing or charges brought against him. (*Id.*) This occurred on February 1, 2021. (*Id.*) Gazlay was still in segregated custody as of his signing the Complaint on July 7, 2021. (*Id.* at 10, 20). Lombardo refused Gazlay's request to be removed from segregation. (*Id.* at 11.)

On February 4, 2021, Clark County Deputy District Attorney Baharav, Las Vegas Metropolitan Police Department ("LVMPD") Officer Miranda, CCDC House Arrest Coordinator Baker, LVMPD Detective Hawkins, and Clark County Deputy District Attorney Binu Palal conspired to officially release Gazlay from CCDC's custody but to track him and put him back in CCDC's custody. (*Id.* at 12.) Baker's part in the conspiracy was to tell Baharav that Gazlay was being released. (*Id.* at 12.) Baharav dismissed the criminal charges that were the reason for Gazlay's detention at CCDC. (*Id.*) Baharav told Palal, who told Hawkins, that Gazlay was being released. (*Id.*) They all planned to surveil, track, and monitor Gazlay's movements and phone calls. (*Id.*)

Around February 13, 2021, Palal and Baharav told Hawkins to contact the Sheriff of Dubois, Idaho and tell that officer about "'two fugitives who are wanted in the State of Nevada.'" (*Id.* at 13.) Hawkins called, telling the sheriff that he had "two governor's warrant's [sic] for the arrest of [Gazlay] and his girlfriend." (*Id.*) Further, that cell-phone pinging determined that Gazlay and his girlfriend were in Dubois. (*Id.*) Hawkins asked the sheriff to capture Gazlay. (*Id.*)

4

When the sheriff executed a no-knock swat raid into Gazlay's residence, he somehow learned that Hawkins's promises of arrest warrants were false. (*Id.*) But the sheriff arrested Gazlay and his girlfriend anyway. (*Id.* at 14.) On March 23, 2021, Baharav perjured himself before an Idaho court by producing a false waiver of extradition purportedly signed by Gazlay on January 24, 2021, concerning the criminal case that Baharav had dismissed on February 4, 2021. (*Id.*) Gazlay was extradited to Nevada on March 26, 2021, and thereafter detained at CCDC. (*Id.*)

Based on these allegations, Gazlay contends that Defendants used excessive force against him, denied his due process rights, falsely arrested and detained him, denied him adequate medical care, and conspired to violate his civil rights. (*Id.* at 8–15.) The Court liberally construes the Complaint as bringing claims based on seven different theories of liability: (1) use of excessive force, (2) supervisory liability for use of excessive force (3) denial of medical care, (4) denial of due process in disciplinary segregation, (5) supervisory liability for denial of due process in disciplinary segregation, (6) conspiracy to violate Gazlay's civil rights, and (7) false arrest and detention. The Court will address each issue in turn.

### A. Fourteenth Amendment Conditions of Confinement

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. City of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (holding that under the Due Process Clause, a detainee may not be punished prior to conviction)). "Under both clauses, the plaintiff must show that the prison officials acted with "deliberate indifference." *Id*. The elements of a pretrial detainee's conditions-of-confinement claim are (1) "the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;" (2) "those conditions put the plaintiff at substantial risk of suffering serious harm;" (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the

defendant caused the plaintiff's injuries." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* at 1125 (internal quotation and brackets omitted). What this means is "the plaintiff must prove more than mere negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation omitted). Simply put, a detainee's claim is "evaluated under an objective deliberate indifference standard." *Id.*

### 1. Use of excessive force

Based on the allegations in Claim 1, when Doe Defendant officers removed Gazlay from the suicide cell, they slammed him on the floor and beat and kicked him. Gazlay was not resisting and did not provoke the attack. Indeed, he submitted to being handcuffed when directed to do so. Gazlay submitted grievances to Lombardo about the officers' conduct, but Lombardo has not disciplined them or controlled their behavior.

The Court finds that Gazlay states a colorable claim for use of excessive force in violation of the Fourteenth Amendment's Due Process Clause against John Does 1–10. But the use of Doe defendants is not favored in the Ninth Circuit. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980). Flexibility is allowed in some cases where the identity of the parties will not be known before filing a complaint but can subsequently be determined through discovery. *Id.* If the identity of any Doe defendant comes to light during discovery, Gazlay may move to substitute the true names of the Doe defendant(s) to assert claims against them at that time. Claim 1, Fourteenth Amendment excessive force, will proceed against John Does 1–10 when Gazlay learns any of their identities.

Lombardo is a supervisor who Gazlay wrote grievances to after the alleged acts of excessive force. A plaintiff may hold supervisors individually liable in a § 1983 action when "culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). A supervisor's liability can be based on the supervisor's (1) "own culpable action or inaction in the training, supervision, or control of his subordinates," (2) "acquiescence in the

constitutional deprivations of which the complaint is made," or (3) "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations and brackets omitted). To state a colorable claim under the supervisory theory of liability, a plaintiff must plead "detailed factual allegations that go . . . beyond reciting the elements of a claim of deliberate indifference." *Starr*, 652 F.3d at 1216. Allegations that are "bald" or "conclusory" are not sufficient because they "are [not] entitled to the presumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 681). Gazlay has not met this standard because his allegations about Lombardo are entirely conclusory. But it does not yet appear that Gazlay cannot state any set of facts upon which relief could be granted. Claim 1, Fourteenth Amendment supervisory liability for excessive force, is therefore dismissed without prejudice and with leave to amend.

### 2.     Denial of medical care

Gazlay alleges in Claim 4 that after he was beaten by officers for no reason when they removed him from the suicide cell, he filled out a form to schedule an appointment with the medical provider. But an officer refused to place the form in the box for medical requests. The Court finds that these thin allegations are not enough to state a colorable claim for denial of medical care at the screening stage. The problem is that Gazlay does not allege facts to show why this event precluded him from being able to obtain medical attention. For example, Gazlay does not allege facts that there was no other officer who could have placed his request in the box. Gazlay also does not allege facts that this condition put him at substantial risk of suffering serious harm. Gazlay, in fact, does not allege what injuries or medical condition he had that required medical attention. But it does not yet appear that Gazlay cannot state any set of facts upon which relief could be granted. As a result, Claim 4, Fourteenth Amendment denial of medical care, is dismissed without prejudice and with leave to amend.

### B.     Fourteenth Amendment Administrative Segregation

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these

rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id*. "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id*. The Supreme Court held that a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n.9. A prisoner has the right to notice and the right to be heard. *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992).

According to the allegations in Claim 2, Gazlay was placed in administrative segregation on February 1, 2021, without cause. He remained in segregation from that day until signing his Complaint on July 7, 2021. Gazlay, however, also alleges that he was arrested in Idaho around February 13, 2021, (ECF No. 1-1 at 13), extradited to Nevada on March 3, 2021, and thereafter detained at CCDC. (*Id*. at 14.) Regardless of the length of Gazlay's alleged segregation, he contends that not once during that time did Defendants charge him with any disciplinary infraction or hold a hearing about the need to segregate him. Gazlay alleges under Claim 3 that Lombardo denied his request to be moved out of segregation.

These allegations are enough to state a colorable due-process claim for screening purposes against John Does 1–10. But these allegations are not enough to state a claim against Lombardo. For example, Gazlay does not allege that Lombardo was aware that he had been placed in segregation without any charges or due-process hearing. As a result, Claim 2, Fourteenth Amendment denial of due process (administrative segregation), will proceed against John Does 1–10 when Gazlay learns any of their identities. And Claim 3, Fourteenth Amendment supervisory

liability for denial of due process (administrative segregation), is dismissed without prejudice and with leave to amend. Lombardo is dismissed from the Complaint without prejudice.

### C.   Conspiracy to Violate Civil Rights

Gazlay alleges under Claim 5 that Baharav, Miranda, Baker, Hawkins, and Palal conspired to violate his civil rights when they cause him to be arrested by a sheriff in Idaho by falsely claiming that they had a valid warrant for his arrest. But the warrant was not valid because Baharav dismissed the criminal charges that the warrant had been to arrest Gazlay for. After Gazlay was arrested, Baharav filed a forged waiver of execution in an Idaho court that was not signed by Gazlay. Gazlay was detained at CCDC for an unspecified time after he was extradited to Nevada in March 2021.

"To state a claim for conspiracy to violate one's constitutional rights under [§ 1983], the plaintiff must state specific facts to support the existence of the claimed conspiracy. *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). Gazlay offers only conclusory allegations that Defendants had an agreement or meeting of the minds to violate his civil rights. But it does not yet appear that Gazlay cannot state a set of facts upon which relief could be granted. As a result, Claim 5, conspiracy to violate civil rights, is dismissed without prejudice and with leave to amend.

/ / /

### D.   False Arrest and Detention

The allegations in Claim 5 can be construed as a claim under the Fourth Amendment for false arrest and detention. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joilet, Ill.*, 137 S. Ct. 911, 918 (2017). "That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding." *Id.* "But it can also occur when the legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.* In either event, "a person is confined without constitutionally adequate justification." *Id.*

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or

is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "The arresting officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The plaintiff bears the burden of proof on the issue of the unlawful arrest, which can be satisfied by showing that the arrest was conducted without a valid warrant. *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001). If the arrest was warrantless, then the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. *Id.*

Gazlay alleges that his arrest and subsequent detention were unlawful because the arrest was conducted without a valid warrant. There was no valid warrant, Gazlay reasons, because the criminal charges that the warrant had been issued to arrest him on had been dismissed. But Gazlay does not identify what the charges were, nor does he allege facts that the prosecutor could not file another complaint with the same charges after voluntarily dismissing the first one. *See* Nev. Rev. Stat. § 174.085(5) (proscribing when a prosecutor can dismiss a complaint without prejudice to the right to file another complaint). Gazlay also does not allege that the warrant expired. The Court finds that Gazlay has not stated a prima facie case that his arrest and subsequent detention were unlawful. But it is not yet clear that Gazlay cannot state any set of facts upon which relief could be granted. As a result, Claim 5, construed as Fourth Amendment unlawful arrest and detention, is dismissed without prejudice and with leave to amend. Baharav, Miranda, Baker, Hawkins, and Palal are dismissed from the Complaint without prejudice.

**III.    LEAVE TO AMEND**

To be clear, Gazlay has leave to amend by alleging additional true facts to show that any defendant personally participated in the alleged constitutional violations and to cure the deficiencies of the Complaint identified herein. Gazlay also has leave to amend by adding parties and substituting the true identity of any Doe defendant. Gazlay is reminded that the use of Doe defendants is not favored in the Ninth Circuit, so he should attempt to determine an alleged bad actor's identity to properly name him or her as a defendant in this action. The Court does not give Gazlay leave to assert new claims.

If Gazlay chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself. This means that the amended complaint must contain all facts and claims and identify all defendants that Gazlay intends to sue. He must file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Gazlay must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each count, he should allege facts sufficient to show what each defendant did to violate his civil rights. He must file the amended complaint within 60 days of the date of this order.

### IV.  MOTION TO APPOINT COUNSEL

Like many inmates who file civil-rights claims, Gazlay asks the Court to find and appoint a lawyer because he cannot afford one, his detention will greatly limit his ability to litigate, and he has limited education and knowledge of the law. (ECF No. 7.) A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). The statute that governs this type of litigation, 28 U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* "Neither of these considerations is dispositive and instead must be viewed together." *Id.*

The Court does not find exceptional circumstances at this time. The Court denies the motion to appoint counsel without prejudice.

### V.  CONCLUSION

It is therefore ordered that the Clerk of the Court file the Complaint (ECF No. 1-1).

It is further ordered that Claim 1, Fourteenth Amendment excessive force, can proceed against John Does 1–10 when Gazlay determines any of their identities.

It is further ordered that Claim 1, Fourteenth Amendment supervisory liability for excessive force, is dismissed without prejudice and with leave to amend.

It is further ordered that Claim 2, Fourteenth Amendment denial of due process (administrative segregation), can proceed against John Does 1–10 when Gazlay determines any of their identities.

It is further ordered that Claim 3, Fourteenth Amendment supervisory liability for denial of due process (administrative segregation), is dismissed without prejudice and with leave to amend.

It is further ordered that Claim 4, Fourteenth Amendment denial of medical care, is dismissed without prejudice and with leave to amend.

It is further ordered that Claim 5, conspiracy to violate civil rights, is dismissed without prejudice and with leave to amend.

It is further ordered that Claim 5, construed as Fourth Amendment false arrest and detention, is dismissed without prejudice and with leave to amend.

It is further ordered that Defendants Joseph Lombardo, Carlos Miranda, Colleen Baharav, Binu Palal, and Daniel Hawkins are dismissed without prejudice from the Complaint.

It is further ordered that if Gazlay chooses to file an amended complaint curing the deficiencies of his Complaint as outlined in this order, he must file the amended complaint within 60 days of the filing of this order.

It is further ordered that the Clerk of the Court will send to Gazlay the approved form for filing a § 1983 complaint, instructions for the same, and a copy of his original complaint (ECF No. 1-1). If Gazlay chooses to file an amended complaint, he must use the approved form and write the words "First Amended" above the words "Civil Rights Complaint" in the caption.

It is further ordered that if Gazlay chooses not to file an amended complaint curing the stated deficiencies of the complaint, this action will proceed only on the following claims: Claim 1, Fourteenth Amendment excessive force, against only John Does 1–10 when Gazlay learns any of their identities; and Claim 2, Fourteenth Amendment denial of due process (administrative segregation), against only John Does 1–10 when Gazlay learns any of their identities.

It is further ordered that Gazlay's motion to appoint counsel (ECF No. 7) is denied without prejudice.

DATED: January 3, 2022

_____
RICHARD F. BOULWARE, III
UNITED STATES DISTRICT JUDGE